UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HIEU VAN HOANG,

                    Petitioner,               Case No. 1:21-cv-101

v.                                      Honorable Jane M. Beckering

GREGORY SKIPPER,

                    Respondent.

_____/

**<u>OPINION</u>**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Hieu Van Hoang is incarcerated with the Michigan Department of Corrections at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. On September 20, 2016, following a two-day jury trial in the Chippewa County Circuit Court, Petitioner was convicted of first-degree arson, in violation of Mich. Comp. Laws § 750.72; attempt to murder, in violation of Mich. Comp. Laws § 750.91; and assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83. On November 22, 2016, the court sentenced Petitioner as a second habitual offender, to life imprisonment on each count.

On January 27, 2021, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

    I.      Petitioner was denied his Sixth Amendment right to counsel at a critical stage of the proceedings—trial preparation and plea negotiations—because an interpreter was not present during attorney/client meetings to help Petitioner understand the evidence against him, trial strategy, and advantages of a plea agreement.

    II.    Petitioner was effectively denied his state and federal constitutional right to effective assistance of counsel at his trial:

       A.      Failure to effectively impeach the state's key witness [Ahn Thi-Ngoc] Nguyen[1], where the record clearly indicates that she told multiple versions of the same story;

       B.      Failure to introduce the letter written by Ms. Nguyen to Petitioner where she explained her reasons for lying to the police about him starting the fire;

       C.      Failure to investigate and introduce the transcript of the telephone conversation between Petitioner and his wife which would have corroborated Petitioner's actual innocence.

(Pet., ECF No. 1, PageID.4–5.) Respondent asserts that Petitioner's grounds for relief are meritless. (ECF No. 10.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus. The Court will also deny Petitioner's motions to appoint counsel (ECF Nos. 23, 27), as well as his motions for an evidentiary hearing (ECF Nos. 24, 25).

## Discussion

### I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

> Hoang and his then wife, Anh Thi-Ngoc Nguyen, lived in an apartment above a nail salon that they owned and operated in Sault Ste. Marie. Nguyen testified that on June 16, 2015, she and Hoang had been arguing before she went to bed alone. Later that night, Hoang woke Nguyen by throwing a phone at her. Hoang was shouting at her as he poured gasoline on the bed. Hoang threatened to stab Nguyen if she tried to leave the room, and he pushed his wife back toward the bed and lit either a match or a lighter.[1] Because her clothing was soaked in gasoline, Nguyen opened the window to escape, causing the unsecured air-conditioning unit to fall out of the window opening, and she jumped out the second-story window to the sidewalk below. Nguyen suffered severe injuries from the fall requiring hospitalization.
>
> A neighbor testified that she saw an air-conditioning unit fall out of Nguyen's apartment window and then saw Nguyen jump down immediately after. The neighbor called 911 and then went to assist Nguyen. An on-duty United States

---

[1] The Court will use the spelling of the victim's name that was used by the Michigan Court of Appeals.

Border Patrol agent saw the neighbor with Nguyen, who was sitting on the sidewalk crying. The agent looked up and, seeing smoke billowing from the apartment window, called central dispatch. Firefighters, paramedics, and police officers responded to the scene, and the fire was quickly contained. The paramedics treated Nguyen, who smelled strongly of gasoline, and they took her to the hospital in an ambulance. In the apartment, firefighters found a gas can in the bedroom, a broken back window, and a broken back door; they alerted the police to these suspicious circumstances. The fire department's investigator recovered a green cigarette lighter from outside the building near the blood on the sidewalk where Nguyen had landed and placed it into evidence. A police investigator concluded that the fire was the result of arson because of the irregular burn pattern on the mattress, the presence of gasoline in the bedroom, and the presence of gasoline in samples collected from the mattress, the bedding, and the clothing worn by Nguyen and Hoang.

A police officer transported Hoang from the hospital to the police station where a police detective interviewed Hoang. According to the detective, while Hoang appeared intoxicated and at times spoke in broken English, the two were able to communicate without an interpreter. In fact, Hoang denied an offer for an interpreter and gave a statement to the police about the circumstances of the fire, claiming that he was asleep when the fire started. Hoang was then arrested on the charge of assault with intent to commit murder.

------

[1] Nguyen was not clear at trial whether Hoang used matches or a lighter to start the fire.

*People v. Hoang*, 935 N.W.2d 396, 401 (Mich. Ct. App. 2019).

As noted by the court of appeals, at the outset of criminal proceedings, "the trial court appointed [Petitioner] a Vietnamese interpreter who was physically present and provided interpretation services for all hearings and the trial." *Id.* The court of appeals also set forth the following relevant procedural history regarding pretrial and trial proceedings:

In March 2016, [Petitioner] sent the first of many letters from jail to the trial court insisting that he needed an interpreter for his pretrial discussions with his attorney. Other inmates, who were apparently fluent in both Vietnamese and English, transcribed the letters for [Petitioner]. The first letter, sent in March 2016, asserted that [Petitioner] needed an interpreter "because of the language barrier" between him and his attorney. [Petitioner] also asserted that the translation of the jail calls between him and Nguyen was not accurate, and he asked the trial court to have the recordings retranslated. Six days later, [Petitioner] wrote another letter, requesting "to have his court appointed interpreter present to go over plea offers and evidence because of his language barrier," and he again asked that the jail calls be retranslated. [Petitioner] then wrote another letter in March, expressing his desire

"to go over all evidence and plea offers with his interpreter so there are no misunderstandings before court proceedings continue." In April 2016, before his plea hearing, [Petitioner] wrote another letter to the trial court in which he acknowledged that an interpreter was available via speakerphone when he met with his attorney. According to [Petitioner], however, he needed to have the interpreter physically present at the meeting to go over evidence "so there is no confusion." [Petitioner] expressed his need to personally meet with the interpreter on the day of his upcoming hearing in order to understand the evidence.

On April 19, 2016, the trial court held a plea hearing. The interpreter was physically present at the hearing, and [Petitioner] explained to the trial court that he wanted the jail calls between him and his wife retranslated because the transcripts of the calls were inaccurate and incomplete because they included only a portion of their conversations. The trial court denied [Petitioner's] request, explaining that the evidence of the jail calls was an issue for trial. Thereafter, [Petitioner] confirmed that he wanted his case to proceed to trial. During the hearing, neither [Petitioner] nor his attorney raised the issue that an interpreter needed to be physically present during attorney-client discussions at the jail.

After the plea hearing, however, [Petitioner] wrote another letter to the trial court, stating again that although the interpreter had participated in his recent discussion with his attorney via speakerphone, she was not physically present. [Petitioner] challenged the trial court in his letter: "How [am I] suppos[ed] to review all the evidence and pleas with someone over a phone that does not have the same paperwork [I have]?" According to [Petitioner], he could not accept a plea offer "when he does not understand the evidence or the evidence is incomplete." In three more letters sent to the trial court before trial, [Petitioner] continued to express his need for an interpreter to be physically present when meeting with his attorney to review the paperwork and evidence in his case. [Petitioner] explained that "[t]he interpreter has only appeared via speakerphone, which [he] has found to be fruitless." [Petitioner] also reiterated that he had not received the complete transcripts of the jail calls with his wife.

*Id.* at 401–02.

Jury selection for Petitioner's trial began on September 19, 2016. (ECF No. 11-4.) Over the course of two days, the jury heard testimony from numerous witnesses, including law enforcement officials, the individual who called 911 about the incident, fire department officials who responded to the scene, Ms. Nguyen, and Petitioner himself. (Trial Tr. I & II, ECF Nos. 11-4, 11-5.) On September 20, 2016, after about two and a half hours of deliberating, the jury reached a

4

guilty verdict. (Trial Tr. II, ECF No. 11-5, PageID.755–56.) Petitioner appeared before the trial court for sentencing on November 22, 2016. (ECF No. 11-6.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences. Counsel raised the claim that Petitioner presents here as habeas ground I. (ECF No. 11-7, PageID.878.) In a *pro per* supplemental brief, Petitioner raised the claims that he presents here as habeas ground II.A–B. Petitioner also filed a *pro per* motion to remand, requesting an evidentiary hearing "to develop a factual record" regarding his claims that counsel failed to (i) impeach Ms. Nguyen's testimony, (ii) introduce the letter that Ms. Nguyen sent to Petitioner explaining "her reasons for lying to the police" regarding the fire, and (iii) "investigate and introduce the transcript of the telephone conversation between [Petitioner] and [Ms. Nguyen] which would have corroborated [Petitioner's] actual innocence." (*Id.*, PageID.793–94.)

The Michigan Court of Appeals granted Petitioner's motion to remand. (*Id.*, PageID.792.) The court of appeals indicated that on remand, "[Petitioner] may submit copies of the letters sent between himself and his wife," and "[i]f [Petitioner's] trial counsel possesses the letters, or if the police or prosecution have copies of the letters, the trial court shall direct them to provide copies for inclusion in the record." (*Id.*) Further, the Michigan Court of Appeals directed the trial court to "appoint a new translator to review both the letters and recordings of telephone conversations between [Petitioner] and his wife that occurred while [Petitioner] was incarcerated in jail awaiting trial and to provide new translations of those letters and recordings if the translator determines that the existing translations are incorrect." (*Id.*) The Michigan Court of Appeals indicated that "[t]he trial court may also determine whether further proceedings, including an evidentiary hearing, are appropriate, and may grant or deny substantive relief to [Petitioner] as it determines appropriate." (*Id.*)

5

Thereafter, the trial court issued an order dated November 27, 2018, finding "that there [wa]s insufficient evidence to corroborate the mere assertion that [Petitioner] provided an exculpatory letter from his wife to his trial counsel" and "that there was no evidence that exculpatory evidence was intentionally suppressed or denied to [Petitioner]." (*Id.*, PageID.856–57.) Specifically, the trial court explained that Petitioner "failed to provide copies of the alleged letters between himself and his wife which were referenced in his motion," and "[n]o documentation or other evidence was provided to corroborate the existence of any such letter." (*Id.*, PageID.857.) Additionally, Petitioner's trial counsel submitted a sworn affidavit attesting that he had not received such a letter from Petitioner (*id.*, Page.ID.859), and Ms. Nguyen submitted a letter denying the existence of such a letter. (*Id.*, Page.ID.860.) The trial court also found "that the new translations of the letters and jail recordings [were] substantially the same as the previously existing translations, and there [was] no support for any assertion that the previous translations were not correct." (*Id.*, PageID.858.)

Subsequently, the court of appeals, having retained jurisdiction over Petitioner's appeal, rejected all of Petitioner's arguments and affirmed his convictions and sentences. *Hoang*, 934 N.W.2d at 400. Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, raising the same grounds he raises in this habeas action. (ECF No. 11-8, PageID.1109–24.) The Michigan Supreme Court denied leave to appeal on October 29, 2019. (*Id.*, PageID.1062.) This § 2254 petition followed.

## II.    Pending Motions

### A.    Motions for an Evidentiary Hearing

Petitioner has filed two motions for an evidentiary hearing. (ECF Nos. 24, 25.) Rule 6 of the Rules Governing § 2254 Cases permits discovery; but "[h]abeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2004). Generally, habeas

corpus actions are determined on the basis of the record made in the state court. *See* Rule 8, Rules Governing § 2254 Cases. The presentation of new evidence at an evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2) is present. *See Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000). The Sixth Circuit Court of Appeals recently reviewed the requirements of the statute:

> As the Supreme Court recently recognized, [the Antiterrorism and Effective Death Penalty Act (AEDPA)] "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop* [*v. Twyford*], 142 S. Ct. [2037,] 2043 [(2022)]. Specifically, the statute allows the development of new evidence in "two quite limited situations": (1) when the claim relies on a "new" and "previously unavailable" "rule of constitutional law" made retroactive by the Supreme Court, or (2) when the claim relies on a "factual predicate that could not have been previously discovered through the exercise of due diligence." *Id*. at 2044 (quoting 28 U.S.C. § 2254(e)(2)). And even if a prisoner can satisfy either of those exceptions, to obtain an evidentiary hearing, he still must show by "clear and convincing evidence" that "no reasonable factfinder" would have convicted him of the crime charged. *Shinn* [*v. Ramirez*], 142 S. Ct. [1718,] 1734 [(2022)] (quoting 28 U.S.C. § 2245(e)(2)(A)(i), (ii)). Mammone does not purport to satisfy any of these stringent requirements for obtaining discovery or an evidentiary hearing: he does not rely on a new rule of constitutional law, he does not contend that the factual predicate for his constitutional claims could not have been previously discovered, and he points to no clear and convincing evidence that would cast doubt on the jury's verdict.

*Mammone v. Jenkins*, 49 F.4th 1026, 1058–59 (6th Cir. 2022).

Petitioner seeks an evidentiary hearing to support his assertion that the court of appeals' decision "was an unreasonable application of federal law and/or was an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings." (ECF No. 24, PageID.1578.) Petitioner reiterates his grounds for relief and contends that the "state court record does not refute [his] factual allegations or otherwise preclude[] habeas relief, or the plea offer and sentence agreement, or a new trial." (*Id.*, PageID.1585.) Petitioner contends that an evidentiary hearing will permit this Court to evaluate Petitioner's credibility.

Petitioner essentially asks this Court to conduct a new hearing and/or trial and conclude that, based on the evidence already presented to the state courts, he is innocent of the crimes of which he has been convicted. He does not rely on any new rule of constitutional law, nor does his claim rely on a factual predicate that could not have been discovered through the exercise of due diligence. Moreover, even if Petitioner cleared those hurdles, he does not show by any evidence, much less clear and convincing evidence, that no reasonable factfinder would have convicted him. Under these circumstances, there is no basis to hold an evidentiary hearing. Accordingly, the Court will deny Plaintiff's motions seeking such a hearing.

### B.   Motions to Appoint Counsel

Petitioner has filed two motions to appoint counsel to represent him in federal habeas proceedings. (ECF Nos. 23, 27.) Indigent habeas petitioners have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires. Rule 8(c), Rules Governing Section 2254 Cases. As discussed *supra*, the Court has determined that an evidentiary hearing is not necessary. Moreover, after considering the complexity of the issues and the procedural posture of this matter, the assistance of counsel does not appear necessary to the proper presentation of Petitioner's position. The Court, therefore, will deny Petitioner's motions to appoint counsel.

### III.   AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a

habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was

unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.   Discussion

### A.   Ground I—Denial of Sixth Amendment Right to Counsel

In habeas ground I, Petitioner contends that he was denied his Sixth Amendment right to counsel during critical stages of the proceedings—trial preparation and plea negotiations—because an interpreter was not physically present during his meetings with counsel. (ECF No. 1, PageID.4.) Petitioner asserts that he was unable to understand the evidence against him, trial strategy, and the advantages of a plea agreement because the interpreter was not physically present. (*Id.*)

The Sixth Amendment guarantees a right to counsel at critical stages of a criminal proceeding. *Montejo v. Louisiana,* 556 U.S. 778, 786 (2009). The Supreme Court has "found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *United States v. Chronic*, 466 U.S. 648, 659 n.25 (1984). Thus, under *Chronic*, the denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of effective assistance of counsel. "The complete denial of counsel during a critical stage of a judicial proceeding . . . mandates a presumption of prejudice because 'the adversary process itself' has been rendered 'presumptively unreliable.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 471 (2000). The right to counsel encompasses a

11

right to confer with one's counsel, and the denial of the right to confer results in a constitutional violation. *See Geders v. United States*, 425 U.S. 80, 91 (1976).

The court of appeals rejected Petitioner's claim. The court first considered Petitioner's claim under state statute, Mich. Comp. Laws § 775.19a, and court rule, Mich. Ct. R. 1.111(B)(1). The court concluded that the court rule "mandates interpretation services during pretrial preparations when necessary for a defendant to meaningfully participate in the case or court proceeding." *Hoang*, 935 N.W.2d at 405. And the court determined that mandate was satisfied with the interpreter's in-person presence at all court proceedings and telephonic presence during pretrial preparations. *Id*.

The court of appeals then proceeded to address the federal constitutional implications of failing to provide an interpreter during pretrial preparation.[2] The court determined that providing an interpreter was constitutionally required to ensure the effective assistance of counsel, even during pretrial proceedings:

> The United States Court of Appeals for the Sixth Circuit, relying on cases like *Powell* [*v. Alabama*, 287 U.S. 45 (1932)] and [*United States v.*] *Cronic*, [466 U.S. 648 (1984),] has addressed the deprivation of a defendant's right to counsel even though the trial court had appointed a trial attorney. In *Mitchell*, the court explained that "[w]hen counsel is appointed but never consults with his client and is suspended from practicing law for the month preceding trial, and the court acquiesces in this constructive denial of counsel by ignoring the defendant's repeated requests for assistance," there is a violation of the defendant's constitutional right to counsel as governed by the Supreme Court of the United States' decision in *Cronic. Mitchell* [*v. Mason*], 325 F.3d [732,] 744 [(6th Cir. 2003)]. In *Cronic*, the Supreme Court of the United States stated that it "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n. 25, 104 S. Ct. 2039.
>
> While we conclude that Hoang had a constitutional right to use an interpreter during attorney-client pretrial preparations, under the facts of this case, there was no Sixth

---

[2] The court noted that both the United States and Michigan Constitutions guarantee the right to counsel in criminal proceedings. *Hoang*, 935 N.W.2d at 403. The court noted further that, generally, both guarantees are "construed to afford the same protections." *Id*.

12

Amendment violation. Hoang acknowledges that he was granted the appointment of an interpreter. He further admits that an interpreter participated via speakerphone while Hoang and his attorney prepared the case and discussed the prosecution's plea offer. Hoang contends, however, that because the interpreter was not physically present while Hoang met with his attorney, he was prevented from fully understanding his attorney, from preparing his case, and from understanding any plea offers from the prosecution. Consequently, Hoang's contention is not that he was denied his right to counsel because the trial court failed to provide an interpreter, but that he was denied his right to counsel because he could not *effectively* communicate with his trial counsel through the interpreter. Hoang's argument is without merit. Before trial, trial counsel wrote a letter to Hoang and explained that they had communicated effectively in writing and in person on several occasions while preparing the case. In fact, trial counsel told Hoang, "The day I told you what the plea offer was you then told me that you did not speak English, or read or write English." At that point, trial counsel took steps to ensure that the interpreter was available via speakerphone. Trial counsel's letter also shows that trial counsel was satisfied with using the interpreter via speakerphone. Thus, unlike the circumstances in *Powell* and *Mitchell*, trial counsel's actions showed that he worked closely and diligently with Hoang to prepare a defense.[4] We cannot conclude that the failure to have an interpreter physically present during Hoang's pretrial meetings with his attorney amounted to the constructive deprivation of counsel. Therefore, we conclude that there was no violation of Hoang's constitutional right to counsel.

—————————————

[4] We note that the trial court—located in the Upper Peninsula—also ensured that an interpreter from the southern region of the Lower Peninsula was physically present for all hearings and the trial.

*Id.* at 407 & n.4. Petitioner cannot claim that the court of appeals applied the wrong standard—the court relied on clearly established federal law throughout its constitutional analysis.

The crux of Petitioner's challenge is that because the interpreter participated in pretrial preparation by telephone, she could not "translate" the body language of Petitioner or his counsel:

> Petitioner contends that the most significant point(s) in his issue, on a lack of an interpreters' presence, is that the lack of physical presence of the interpreter in his case, denied him the ability to effectively communicate with his trial counsel, and to a significant extent, his appellate counsel! Petitioner contends that he relies on body language to interpret and determine the merit of communications. . . . A lot of times petitioners' communications with others, especially in English was by and through his recognition of body language signs.

(Pet'r's Br., ECF No. 2, PageID.125.) Further, "Petitioner contends and has contended that his Sixth Amendment right to counsel has been violated because the interpreter could not recognize the physical nuances of the petitioner nor of counsel while translating via the phone in the preparation stages of the trial proceedings." (Pet'r's Resp., ECF No. 14, PageID.1438) Additionally,

> Petitioner contends that the parties and the court [are] addressing a single issue[:] Does communication between people differ in any manner, when conducted in person or pursuant to other means, such as a phone or other electronic medium? Petitioner contends that body language itself, has a distinct effect on and in the communication exchange.

(*Id.*, PageID.1442.)

There is a logical flaw in Petitioner's argument. He had complete access to his counsel's body language—and counsel had complete access to Petitioner's body language—when they met in person during their pretrial preparations. There is nothing to suggest that the interpreter was schooled in the translation of body language; she was certified in the translation of Vietnamese to English and English to Vietnamese. If the translator had been present, it would only have permitted Petitioner to translate her body language.

But even if there were a modicum of logical persuasiveness to Petitioner's "body language" argument, this Court could not be persuaded because this Court is not addressing Petitioner's claim *de novo*. On habeas review, this Court can only assess whether the court of appeals' rejection of Petitioner's "body language" claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner's argument on that point is particularly unpersuasive because he does not cite a single  case—United States Supreme Court authority or otherwise—that holds the Sixth Amendment requires a foreign language interpreter to be physically present during pretrial preparation meetings with counsel, whether to facilitate the interpretation of "body language" or anything else. Absent Supreme Court authority to that effect, this Court cannot

14

conclude that the court of appeals' determination was contrary to, or an unreasonable application of, clearly established federal law. Thus, Petitioner is not entitled to relief on habeas ground I.

### B.    Ground II—Ineffective Assistance of Counsel

In habeas ground II, Petitioner contends that he was denied the effective assistance of counsel in three separate ways. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before

15

the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s

deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the

"Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in

the context of habeas and AEDPA . . ." (citing *Harrington*, 562 U.S. at 102)).

      With respect to Petitioner's ineffective assistance claims, the court of appeals set forth the

following standard of review:

> To demonstrate ineffective assistance of counsel, a "defendant must show that his
> counsel's performance was deficient, and that there is a reasonable probability that
> but for that deficient performance, the result of the trial would have been different."
> *Matuszak*, 263 Mich. App. at 57–58, 687 N.W.2d 342. "A reasonable probability is
> a probability sufficient to undermine confidence in the outcome." *People v. Carbin*,
> 463 Mich. 590, 600, 623 N.W.2d 884 (2001) (quotation marks and citation
> omitted). A defendant must establish a factual basis for an ineffective-assistance-
> of-counsel claim. *People v. Hoag*, 460 Mich. 1, 6, 594 N.W.2d 57 (1999). Matters
> of strategy that were not successful, in hindsight, do not constitute deficient
> performance. *People v. Unger*, 278 Mich. App. 210, 242-243, 749 N.W.2d 272
> (2008). When reviewing an ineffective-assistance-of-counsel claim, "the inquiry is
> not whether a defendant's case might conceivably have been advanced by alternate
> means." *LeBlanc*, 465 Mich. at 582, 640 N.W.2d 246.

*Hoang*, 935 N.W.2d at 408. Although the state courts cited state court authority for the standard,

the standard applied is identical to *Strickland*. Moreover, if one looks to *Carbin*, the source of the

standard is identified as *Strickland*. *See Carbin*, 623 N.W.2d at 889. Thus, there is no question that

the state courts applied the correct standard. The Court, therefore, will consider whether the state

courts reasonably applied the standard for each of Petitioner's claims of ineffective assistance of

counsel.

### 1.     Ground II(a)—Failure to Adequately Impeach

      In habeas ground II(a), Petitioner faults counsel for failing to effectively impeach the

State's key witness, his wife, Ahn Thi-Ngoc Nguyen, where the record clearly indicates that she

told multiple versions of the same story. (ECF No. 1, PageID.5.) Specifically, Petitioner contends

that counsel should have impeached his wife "regarding the transcript of a phone call in which

Mrs. Nguyen asserted that [Petitioner] did not put gas on her." (ECF No. 1-2, PageID.21.) Petitioner also argues that counsel should have cross-examined his wife regarding the phone that Petitioner allegedly threw at her. (*Id.*, PageID.22.) He also faults counsel for not rebutting testimony by his wife regarding a jewelry box that was on top of the window air conditioner. (ECF No. 2, PageID.136.)

"Decisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, at *16 (W.D. Mich. Aug. 22, 2011) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Counsel's decisions regarding how to cross-examine a witness are matters of trial strategy, which are entitled to "great respect" by this Court. *See Glenn v. Sowders*, No. 85-5754, 1986 WL 18475, at *4 (6th Cir. Dec. 8, 1986); *see also Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). While there may be room for improvement in cross-examination, were that to be "the standard of constitutional effectiveness, few would be the counsel whose performance [pass] muster." *Henderson*, 118 F.3d at 1287 (quoting *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996)).

The court of appeals rejected Petitioner's claim in a lengthy discussion, stating:

> In his Standard 4 brief, Hoang challenges several strategic decisions made by trial counsel, including arguing that the failure to impeach Nguyen's testimony constituted deficient performance. Hoang first argues that trial counsel failed to impeach Nguyen's testimony with her own contradictory testimony. This argument is unavailing because trial counsel did, in fact, impeach Nguyen's testimony in an attempt to create a reasonable doubt about Hoang's guilt. Trial counsel highlighted Nguyen's inconsistent statements during trial, noting that she first claimed Hoang had used a match to light the fire but later said that he had used a lighter. Trial

17

counsel then highlighted Nguyen's inconsistent testimony from the preliminary examination, wherein she had stated that she saw Hoang with only a lighter, not matches. After being confronted with her conflicting testimony, Nguyen insisted that she meant a lighter and explained that the inconsistency was the result of the translation. Hoang argues that trial counsel should have asked the interpreter to clarify Nguyen's conflicting testimony, especially because she alleged that the difference in her testimony was due to translation errors. Hoang is essentially asserting that trial counsel should have called the interpreter to testify about the translation of the words for match and lighter. However, trial counsel adequately brought the issue to the jury's attention. Therefore, trial counsel's performance was not deficient.

Hoang also argues that trial counsel should have impeached Nguyen's trial testimony that she and Hoang did not normally keep a gas can in the apartment given that she had testified at the preliminary hearing that they normally kept a gas can in the bathroom. Hoang's argument fails because trial counsel asked Nguyen about the gas can at trial and elicited confusing and inconsistent testimony from her about whether and where they had kept the gas can in the apartment.

Hoang makes several other claims challenging specific areas of trial counsel's cross-examination. Hoang contends that Nguyen contacted him in jail and sent him money in jail, evidenced by the purportedly incorrect translations of the jail calls. Hoang argues that trial counsel failed to question Nguyen about this contact with Hoang despite a no-contact order. However, trial counsel questioned Nguyen about her communications with Hoang after he was arrested, and Nguyen admitted that she sent him money after he called her and asked for it. Accordingly, trial counsel did ask Nguyen about her contact with Hoang, and trial counsel's decision not to persist in questioning Nguyen about this contact was entirely reasonable.

Hoang also contends that his consoling of Nguyen after she jumped out of the window and at the hospital were inconsistent with guilt and that trial counsel should have highlighted Nguyen's reaction to Hoang immediately after her injuries. Hoang fails to explain the relevance of this testimony, and regardless, any decision on the part of trial counsel to refrain from eliciting testimony on the subject constitutes trial strategy. Considering the evidence as a whole, trial counsel could very well have avoided the subject because a jury might reasonably infer that Hoang manipulated the situation to look like he was playing the part of a worried husband to avoid suspicion but was really using it as an opportunity to talk to Nguyen alone and to coach her about what to say to the authorities about the fire.

Lastly, Hoang contends that Nguyen's testimony was inconsistent as to when gasoline was poured on her clothing relative to when the fire started. Hoang also argues that the police did not recover the phone in the apartment that Hoang allegedly threw at Nguyen to wake her, that the police found his and Nguyen's phones in Nguyen's car, and that Hoang was not given copies of the police reports by counsel. Hoang has provided this Court with no factual support for these claims, and he has not made a documented request for the police records. Therefore, these

claims have no merit. Hoang is correct that trial counsel did not ask Nguyen about every aspect of her testimony, but again, he has failed to defeat the presumption that counsel's failure to inquire into these matters was a strategic decision designed to highlight only the most inconsistent evidence without bogging the jury down with insignificant details. Cross-examining a victim in an attempted murder case about every potentially inconsistent detail in the victim's testimony can be counterproductive and draw attention to details that support an inference of guilt. For example, our Supreme Court has approved of a defense attorney's decision not to call an expert witness to rebut the prosecution's expert witness when trial counsel explained that creating a battle of the experts tended to bolster the importance of the testimony of the expert witnesses, particularly the prosecution's expert witness. *LeBlanc*, 465 Mich. at 580-583, 640 N.W.2d 246. In sum, Hoang has not demonstrated that trial counsel's handling of the defense was anything but reasonably strategic. Witness credibility is a matter for the jury to decide. *People v. Lemmon*, 456 Mich. 625, 637, 576 N.W.2d 129 (1998). Accordingly, having heard both Nguyen's and Hoang's testimony, the jury reasonably chose to credit Nguyen's testimony, in addition to the corroborating evidence, to find Hoang guilty.

*Hoang*, 935 N.W.2d at 409–10. With respect to the testimony regarding the jewelry box, the court

of appeals noted:

Hoang argues that trial counsel should have rebutted Nguyen's testimony regarding a jewelry box that fell off the air-conditioning unit when she opened the window. When Nguyen testified about opening the window to jump out of the apartment to avoid the fire, she stated that she had stacked things, including a jewelry box, on top of the air-conditioning unit. According to Hoang, trial counsel failed to demonstrate that it was impossible for a jewelry box to sit on top of the air-conditioning unit and that it therefore could not have fallen to the ground when his wife opened the window. Hoang claims that the available space on top of the air-conditioning unit was too small. Trial counsel asked some of the police officers who testified at trial about the jewelry box and about the photographs taken of the bedroom, which showed the jewelry box lying on the ground, but the officers were not able to provide any details about the size or contents of the jewelry box or where it was located during the fire.

Hoang appears to be suggesting that Nguyen set the fire to kill him and take the jewelry with her, or some variation on this theme, but the string of inferences necessary to arrive at this conclusion is speculative and does not warrant reversal on this record. Further, on cross-examination, trial counsel did ask Nguyen whether she was upset that Hoang may have been having an affair and confirmed that Nguyen would become the sole owner of the nail salon if they divorced. After this line of questioning, trial counsel ended cross-examination, having attempted to leave the jury with the impression that Nguyen had a motive for lying about Hoang

starting the fire. Trial counsel's performance was not deficient for failing to rebut
the evidence presented.

*Id.* at 410–11.

Here, in his § 2254 petition, Petitioner merely reiterates the arguments raised before the
state courts to support his claim. He voices his continued disagreement with counsel's strategy, as
that strategy was identified and described by the court of appeals. He persists in his claim that
pressing the victim on the tiniest detail to impeach her was the better strategy. Perhaps it was. But
that is beside the point.

The issue is not whether counsel's approach was the optimal approach; the issue is not even
"whether counsel's actions were reasonable[,] *Harrington*, 562 U.S. at 105; the issue is "whether
there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard[,]" *Id*. In
the context of the *Strickland* presumption that counsel's conduct falls within the wide range of
professional assistance, where petitioner bears the burden of overcoming the presumption that the
challenged action might be considered sound trial strategy, Petitioner must show that the
challenged action ***cannot*** be considered sound trial strategy. Anything short of that means that
"there is [a] reasonable argument that counsel satisfied *Strickland*'s deferential standard."

The court of appeals identified a strategic reason for counsel's approach regarding
impeachment of the victim. Petitioner's choice to simply point out a strategy that, in hindsight,
might have been superior does not suffice. Petitioner must show that the court of appeals' identified
strategy is unreasonable—that it cannot be considered sound. He has not. Therefore, Petitioner has
failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim
premised upon counsel's failure to adequately cross-examine and impeach Petitioner's wife is
contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled
to relief on habeas ground II(a).

### 2.      Ground II(b)—Failure to Admit Letter

In habeas ground II(b), Petitioner contends that counsel was ineffective for not introducing a letter written by Petitioner's wife to Petitioner in which she allegedly explained her reasons for lying to the police and stating that Petitioner had started the fire. (ECF No. 1, PageID.5.) The court of appeals rejected Petitioner's argument, stating:

> In his Standard 4 brief, Hoang also argues that trial counsel failed to introduce into evidence a letter that Nguyen allegedly wrote to Hoang, and failed to question Nguyen about the letter, in which Nguyen purportedly explained that the police had threatened to charge her with conspiracy to commit arson if she did not tell them that Hoang had started the fire and in which she apologized to Hoang for lying to the police. Hoang preserved this issue by pursuing a remand for an evidentiary hearing. On remand, trial counsel produced an affidavit stating that Hoang had given him no such letter, and Nguyen wrote a letter stating that she had no further contact with Hoang after they spoke when he was in jail and she sent him money. During the jail calls, Nguyen told Hoang that the police told her not to deny knowing what happened and asked her whether she and her husband were plotting something. Nguyen's description of what the police said to her does not support Hoang's claim that the police directed Nguyen to say that Hoang started the fire, nor does this conversation between Nguyen and Hoang substantiate the existence of a letter to Hoang in which Nguyen stated that she lied to the police.

*Hoang*, 935 N.W.2d at 411–12. The court of appeals ultimately rejected Petitioner's claim relating to the letter because Petitioner had not demonstrated a factual basis to support it. *Id*. at 412–13.

Petitioner has not remedied that defect in this Court. In his brief supporting his § 2254 petition, Petitioner contends that "he received a letter and it may or may not have been prior to the jail phone call requesting money." (ECF No. 2, PageID.140.) He asserts that "[i]f the letter was confiscated by jail officials it was still a matter available to record." (*Id.*) Petitioner, however, has not provided any evidence to support his claim that such a letter exists and, therefore, has not refuted trial counsel's affidavit that Petitioner never provided him "with a letter that was written by his wife" and "never mentioned wanting [counsel] to have a letter from her to be translated." (ECF No. 11-7, PageID.859.) Counsel cannot be faulted for failing to introduce non-existent evidence. Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective

assistance claim premised upon counsel's failure to admit the purported letter from his wife is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to relief on habeas ground II(b).

### 3.     Ground II(c)—Failure to Introduce Jail Calls

Petitioner's final claim of ineffective assistance of counsel faults trial counsel for failing to investigate and introduce the transcript of jail telephone calls between Petitioner and his wife. (ECF No. 1, PageID.5.) Petitioner contends that the transcript of these calls would have corroborated his actual innocence. (*Id.*)

The court of appeals rejected Petitioner's claim, stating:

Hoang argues that trial counsel failed to introduce complete and accurate transcripts of the jail calls, which Hoang continues to maintain were translated erroneously. Hoang raised this issue when he sought a remand for an evidentiary hearing, and the trial court had the recordings of the jail calls retranslated by a different translator. First, the transcripts of the calls show that Hoang initiated the calls and that he told Nguyen to say that nothing happened when she testified at the preliminary examination. Hoang also told Nguyen the story he told the police. When Hoang raised the issue of the transcripts at the sentencing hearing, trial counsel stated that he did not introduce the transcripts of the calls into evidence because they tended to show Hoang's guilt. We have reviewed the transcripts and agree with trial counsel. Further, Hoang has described no attempt to have a third party interpret the recordings, and he has provided no details about what part of the recordings were incorrectly translated. Hoang has not supported this claim with a factual basis that warrants remand.

*Hoang*, 925 N.W.2d at 412.

As noted *supra*, while decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, the failure to call witnesses or present other evidence may constitute ineffective assistance when it deprives a petitioner of a substantial defense. *See Chegwidden*, 92 F. App'x at 311; *Hutchison*, 303 F.3d at 749. Upon review of the

phone call transcripts,[3] this Court concludes that Petitioner was not deprived of a substantial defense because of counsel's decision not to admit the transcript. Doing so would have been damaging to Petitioner's defense because, as counsel reported and the court of appeals confirmed, they tended to show Petitioner's guilt.[4] Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to admit transcripts of his phone calls with his wife is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to relief on habeas ground II(c).

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that

---

[3] The second version of the jail call transcripts appear at ECF No. 11-7, PageID.991–1027. The transcripts were prepared at Petitioner's request to demonstrate that the initial translations were flawed. The new translation was found to be essentially the same as the original translation.

[4] For example, during the first call, Petitioner's wife asked him why he "did it to [her]." (ECF No. 11-7, PageID.992.) Petitioner responded, "I knew why. And I am very sorry about it. But I want to tell you again that I am not allowed to call and talk to you so if they ask you about whom you are talking to then just tell them that you are talking to someone else and not to me, ok?" (*Id.*)

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment denying the petition and an order denying a certificate of appealability as well as Petitioner's motions to appoint counsel and for an evidentiary hearing (ECF Nos. 23, 24, 25, 27).

Dated:   February 8, 2023                          /s/ Jane M. Beckering
                                                   Jane M. Beckering
                                                   United States District Judge